JAMES L. HILTON, plaintiff in error, *vs.* F. W. SIMS & COM-
PANY, defendants in error.

Where a planter, in March, 1869, gave his factor a note for $2,000, se·
cured by mortgage of realty as collateral security for all advances
made by the factor, up to November 1st, 1869, at which date the plan-
ter owed the factor about $1,300, and after that time the planter sent
forward cotton, which the factor sold for more than $1,300, but the
planter drew upon him by draft in favor of different persons as he for-
warded his cotton, and the factor took up notes of the planter to an
amount large enough to absorb the whole proceeds of the cotton, ex-
cept about $650, which was credited on the amount due the factor on
November 1st, the note and mortgage are still collateral security for
the balance due the factor.    The drafts by the planter and the notes
taken up are an appropriation of the proceeds of the cotton to debts
other than that due the factor on November 1st, 1869.

Appropriation of payments.    Advances.    Before Judge
SCHLEY.    Screven Superior Court.    May Term, 1871.

F. W. Sims & Company brought complaint against James
L. Hilton upon two promissory notes, one dated March 1st,
1869, due on or before December 1st, 1869, for the sum of
$106.12, being for 2115 pounds of Peruvian guano ; the
other, dated March 27th, 1869, due on the first day of No-
vember next thereafter, for the sum of $2000, for value
received.    Plaintiff introduced these notes and closed.    De-
fendant introduced a mortgage, bearing even date with the
last of said notes, and executed for the purpose of secur-
ing the same.    The condition of said mortgage is as follows :
" Now, should the party of the first part well and truly pay or
cause to be paid to the party of the second part all and every
the advances that may be made by the party of the second
part, for the use and benefit of the party of the first part, at
his request, from this date to the said first day of November,
1869, whether the same be by advance of money, goods or
other things, or acceptances of drafts or orders, of the party of
the first part, or money paid for his use, and all the usual
charges, commissions and interest for said advances, accept-

ances or payments, and the same shall well and truly pay by November 1st, 1869, then this indenture, as well as said promissory note, shall cease and determine." The evidence showed that, after allowing all credits, defendant was still indebted to plaintiffs in the sum of $657.57 for advances; that advances were made after November 1st, 1869, in shape of drafts drawn by the defendant in favor of third persons, and of notes on defendant paid by plaintiffs; that no new contract was made in reference to these additional advances; that the business relations were continued after November 1st, 1869, as they had been carried on between the parties before; that defendant, after the date aforesaid, had shipped plaintiffs cotton and had drawn on them; that he had never notified plaintiffs that their former manner of doing business was at an end; that defendant did not notify plaintiffs that he was not drawing upon them under the mortgage as collateral security; that on the first day of November, 1869, defendant was indebted to plaintiffs the sum of $1,293.57; that cotton had been shipped by defendants to plaintiffs since the aforesaid date, but the proceeds, with the exception of the credit allowed, had been drawn out. The jury returned a verdict for the plaintiffs for the sum of $657.57. Whereupon defendant moved for a new trial, which motion was overruled by the Court, and defendant excepted upon the following grounds, to-wit:

1st. Because the verdict is contrary to law.

2d. Because the verdict is contrary to the evidence.

3d. Because the verdict is contrary to law and the evidence.

4th. Because the verdict is contrary to the charge of the Court.

5th. Because the Court erred in charging the jury "that said note sued on for $2,000, and the contract under which it was given, was a continuing contract, and that said note would, without an express agreement, cover as a collateral up to the amount of the note, any advances made by the plaintiffs to defendant after the first day of November, 1869, and

Hilton *vs.* Sims & Company.

that plaintiffs could, in the suit on said note, recover on any balance due to them on such advancements made after said November 1st."

6th. Because the Court erred in charging the jury "that if defendant neglected to give notice to plaintiffs that said note for $2,000 ceased and determined upon the payment to plaintiffs by defendant of the amount covered by said note, as a collateral, the plaintiffs could recover in a suit on said collateral note any amount the jury might find due to plaintiffs at the commencement of the suit for advances, even though defendant had by said November 1st, paid plaintiffs all indebtedness for advances made up to that time, and although defendant had paid plaintiffs, before the commencement of said suit, all indebtedness before the date of said note, and the amount of $2,000, and commissions and interest for advancing the same."

7th. Because the Court erred in charging the jury "that the Court's construction of the contract, by which said collateral note was given, and which contract is contained in the mortgage deed given by defendant to plaintiff's, and in evidence on said trial, was that plaintiffs had agreed to advance to defendant, and that these advances were not to exceed at any one time $2,000 ; but that the contract, according to the Court's construction, did not mean that said note was to be collateral only for such advances as might be made from the date of said collateral note to said November 1, to the amount of $2,000."

8th. Because it being in evidence that the balance claimed by plaintiffs was a balance on open account, it was the duty of the jury, under the charge of the Court, so to have moulded their verdict as to protect the defendant against any subsequent suit upon said account, whereas the verdict is general for the plaintiffs.

W. H. HOBBY, by brief, for plaintiff in error.

JOHN C. DELL ; J. R. SAUSSY, for defendants.

MONTGOMERY, Judge.

Homestead having been waived by the mortgage which secured the collateral note, given in this case, it became, in the opinion of counsel for the plaintiff in error, important to show that the debt to secure which the collateral note had been given, was paid off by the proceeds of the cotton shipped by Hilton to F. W. Sims & Company, after the time had expired, to secure the advances, during which the note and mortgage were given. Could this have been shown, then the application for homestead would have been relieved from the embarrassment of the waiver contained in the mortgage, which was signed both by husband and wife. To show this, counsel relied on that principle of law which applies payments by a debtor to his creditor to the oldest debts, where neither party make any appropriation of the payments. Unfortunately for the application of the principle in this case, both debtor and creditor applied the proceeds of the cotton received and sold, after November 1, 1869, to debts other than the debt due the factors, at that date, to-wit: to the taking up of drafts drawn by the debtor, in favor of third persons (thus showing *his* application of the funds) on his factors, the defendants in error, and the payment by them of those drafts, and an outstanding note or two of Hilton, due to a third person, thereby showing *their* application of the proceeds of the cotton sales. After payment of the notes and drafts, F. W. Sims & Company applied the balance of cotton proceeds to the debt due November 1, 1869, leaving still due, *of this debt,* just the sum found by the verdict, and for which the collateral securities are bound. The note and mortgage secured no advances made after November 1, 1869, but they were all paid by the cotton forwarded after that date, inasmuch as they consisted of debts due third persons, and paid, as before stated, by the factor, either at the instance of the planter himself, or of his own motion.

Judgment affirmed.